IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM PEPKE, | : |
| | : |
| | : Case 2:23-cv-02089-NR |
| Plaintiff, | : |
| v. | : |
| | : |
| MANOR HOUSE KITCHENS, INC., | : |
| Defendant. | : |
| | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

William Pepke asserts that Defendant Manor House Kitchens, Inc. terminated his employment because of his age in violation of the Age Discrimination in Employment Act of 1976 (ADEA) and the Pennsylvania Human Relations Act (PHRA).  On August 7, 2023, Manor House's President, Jeffrey Backus, took Mr. Pepke into his office, closed the door, and explained to Mr. Pepke that he was being let go.  Initially, Mr. Backus informed Mr. Pepke that he was no longer on the schedule and that Manor House's sales had been declining.  However, Mr. Backus then candidly provided the reason why Mr. Pepke, and not someone else, had been selected for an alleged layoff:  "***You're 60 years old, Bill.  I'm going to let the younger guys work.  I'm going to give them the work***."  In addition, during that meeting Mr. Backus further explained that "***the younger employees live pay-to-pay and they are the future of the company***," and that Mr. Pepke's "***work time was limited***."[1]

---

[1]      Mr. Pepke disagrees with Manor House's assertion that "Mr. Pepke relies exclusively upon two alleged remarks" during the August 7, 2023 meeting.  Doc. 31 at 2 (page numbers refer to those on the header added by ECF).  As evidenced throughout this opposition, that is not true as Mr. Pepke relies upon additional statements made by Mr. Backus.

These statements on August 7, 2023 (as well as some statements made by Mr. Backus several weeks earlier during Mr. Pepke's annual review such as when are you retiring, you're getting up there in age, and you are 60 years old) constitute direct evidence of age discrimination.  These statements directly demonstrate Mr. Backus' discriminatory bias as to Mr. Pepke's age and, as a result, a reasonable jury could find that Mr. Pepke's age was a determinative factor in Manor House's decision to end his employment.

Manor House argues that it can achieve summary judgment by establishing that its decision to lay off *someone* was justified by adverse business conditions.  But this lawsuit has always been about Manor House's decision to select *Mr. Pepke* as the employee that should be let go.  Mr. Pepke contends that his age was a determinative factor in selecting *him* – rather than younger employees – for a purported layoff.

Manor House's reliance upon its adverse business conditions to justify its employment decision is not unusual.  Many employment discrimination lawsuits arise in the context of an employer's legitimate need to trim its workforce.  Within this context, however, the employer must still refrain from discrimination in deciding which employees should be let go.  *See Tomasso v. Boeing Co.*, 445 F.3d 702, 707 (3d. Cir. 2006) ("even in a genuine [reduction in force] (one that is motivated on a programmatic level by economic concerns), individuals may be selected for layoff on the basis of age.  For this reason, even in a RIF, we use the *McDonnell Douglas* framework to expose such discrimination.  The employer must have age-neutral reasons for deciding to lay off certain employees, and the employee can challenge these reasons as prextextual.").

Mr. Pepke submits that this case involves direct evidence of age discrimination because Mr. Backus' ageist statements demonstrate his discriminatory bias as to Mr. Pepke's age and

directly provide the reason as to why Mr. Pepke, and not someone else, was let go.  Thus, utilization of the *McDonnell Douglas* framework is not necessary.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 997 (2002) ("if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case.").

However, if the Court believes that Mr. Backus' statements are not enough to constitute direct evidence of age discrimination, Mr. Pepke can still demonstrate age discrimination by relying upon the *McDonnell Douglas* framework.  Manor House contends the fourth element of a *prima facie* case cannot be met, but Manor House ignores Mr. Backus' testimony that Mr. Pepke's job duties were subsequently performed by two younger employees, and there is no dispute that the younger employees on Mr. Pepke's crew were not laid off.  Moreover, caselaw is clear that a prima facie case does not necessarily require evidence concerning replacement by a younger employee.

Although Manor House contends that it had a legitimate, non-discriminatory reason for ending Mr. Pepke's employment, Mr. Pepke will rely again on Mr. Backus' statements during the August 7th meeting and during Mr. Pepke's annual review to prove pretext.  In addition, Mr. Pepke can also point to other evidence, such as Manor House's decision to retain all of the younger employees on Mr. Pepke's crew, Manor House's failure to recall Mr. Pepke even though Mr. Backus admitted there was a need to bring Mr. Pepke back because of sales and workload, Manor House's decision to re-hire two younger employees on Mr. Pepke's crew prior to ending Mr. Pepke's employment, among other reasons discussed in Section IV.B.

To be crystal clear, Mr. Pepke disputes Manor House's assertion that he was laid off by Manor House "as the result of a slowdown in workflow."  Doc. 31 at ¶ 7.  As discussed throughout this opposition, Mr. Pepke presents both direct and circumstantial evidence disputing

Manor House's purported business justification behind its decision to end Mr. Pepke's employment and, as a result, there are disputed material facts.  Accordingly, Manor House's motion should be denied.

## II.    STATEMENT OF FACTS[2]

1.      Mr. Pepke was employed by Manor House as a Lead Installer for over 20 years wherein he performed work within Manor House's granite installation department.  *See* Appx. Ex. A[3] at 31:16-20, 45:6-19, 39:12-15; Appx. Ex. B at 120:25-121:4, 20:19-21.  Mr. Pepke was also cross-trained to work in multiple departments and did so when needed.  *See* Appx. Ex. A at 40:10-41:19, 31:16-20, 45:6-46:5.

2.      On Monday, August 7, 2023, the President of Manor House, Jeffrey Backus, informed Mr. Pepke in a meeting that he was ending Mr. Pepke's employment with Manor House.  *See* Appx. Ex. A at 55:3-60:16; Appx. Ex. B.at 19:24-20-12; Appx. Ex. C; Appx. Ex. D at Response to Interrogatory No. 10.  No one else was present during this meeting, and Mr. Backus' office door was closed.  *See* Appx. Ex. A at 55:15-17; Appx. Ex. B at 25:9-24.  Mr. Backus made the decision to end Mr. Pepke's employment.  Appx. Ex. B at 26:19-28:5.

3.      During his deposition, Mr. Pepke described the August 7, 2023 meeting with Mr. Backus:

- Mr. Backus showed Mr. Pepke some upcoming installation schedules for the next two months.  *See* Appx. Ex. A at 55:10-14.

---

[2]      Manor House correctly asserts in its motion that "the evidence must be viewed in the light most favorable to Mr. Pepke and all factual inferences drawn in his favor." Doc. 31 at p. 3. Thus, although Manor House disputes some of Mr. Pepke's testimony and evidence in this case, as Manor House admits in its motion, "for purposes of this Motion, Defendant recognizes that the Court must credit Mr. Pepke's version of events."  *Id.* at 2.

[3]      Manor House's counsel never reached out to Mr. Pepke's counsel prior to filing Manor House's appendix of exhibits.  As a result, Mr. Pepke is filing his own appendix of exhibits.

- Mr. Backus told Mr. Pepke, "You're not on the schedule, Bill." *Id.* at 56:6-11.

- Mr. Pepke asked Mr. Backus, "If I'm not on the schedule, does that mean I'm laid off?" *Id.* at 56:12-15. Mr. Backus responded, "Yes, and I'm not going to dispute for you to collect [unemployment]." *Id.* at 56:16-20.

- Mr. Backus said that sales had slowed down and talked about interest rates, and showed Mr. Pepke documents indicating decreases in Manor House Kitchen's sales. *See id.* at 55:21-56:5, 63:10-24, 65:18-22.

- Mr. Backus said something to the effect that he was taking a risk that Mr. Pepke may find a new job, suggested that Mr. Pepke apply for unemployment, and said "Well, I'll just see how work goes six or eight weeks, see how the schedule is." *Id.* at 56:21-57:10.

- Mr. Backus stated: "***You're 60 years old, Bill. I'm going to let the younger guys work. I'm going to give them the work***." Appx. Ex. A at 57:10-13; *see also id.* at 59:21-60:5.

- Mr. Backus said, "You're okay in life, Bill. ***The younger guys need the work***." I*d.*at 59:2-59:11. He also might have mentioned that the younger guys were paycheck to paycheck and that some of them maybe owed Mr. Backus money. *See id.* at 59:15-20

4.     When he returned home on August 7, 2023, Mr. Pepke made handwritten notes concerning the meeting between Mr. Backus and himself and the immediate aftermath. *See* Appx. Ex. A at 95:13-97:7. Mr. Pepke's wife, Karen Pepke, typed up his notes the next day. *See id.* A copy of those typed notes are found at Appx. Ex. C. They provide some additional details concerning the August 7, 2023 meeting. *See id.* In particular, Mr. Backus stated during the August 7th meeting that "***the younger employees live pay-to-pay and they are the future of the company***," and that that Mr. Pepke "***was over 60 years old***" and that his "***work time was limited***." *Id.* at 2.

5.     Mr. Pepke testified that he was "devastated by" Mr. Backus' statements that he was being let go because he was 60 years old and that Mr. Backus was going to keep letting the younger guys work instead. *See* Appx. Ex. A at 57:10-14; *accord id.* at 86:7-12. Mr. Pepke was

60 years old when his employment with Manor House ended on August 7, 2023. *See id.* at 15:4-5.

6.      Although Mr. Backus testified "yes" in response to when Mr. Pepke was asked if he was being laid off, Mr. Backus never affirmatively stated that Mr. Pepke was being laid off. *See id.* at 56:6-20.  Indeed, Mr. Pepke believed that Mr. Backus was never going to call him back. *See id.* at 57:15-59:1, 131:23-132:9.  Moreover, Manor House terminated his health insurance, required him to return his company phone and key, and paid him out for any vacation and personal days. *See id.* at 57:15-59:1.

7.      Mr. Pepke testified that he does ***not*** agree with Manor House Kitchen's assertion that he was laid off due to a slow-down in workflow. *See id.* at 61:15-62:11; *accord id.* at 132:1-19.

8.      Mr. Pepke worked as part of a crew typically consisting of Christopher Price, Joshua Ward, Andrew Pandullo, David Pandullo, and Robert Gaye. *See id.* at 46:9-47:5.  When Mr. Backus told Mr. Pepke that he was going to keep the younger guys working, Mr. Backus was referring to the following employees on Mr. Pepke's crew:  Christopher Price (31 years old), Joshua Ward (32 years old), Andrew Pandullo (approximately 38 years old), David Pandullo (approximately 34 years old), and Robert Gaye (approximately 41 years old.) *See* Appx. Ex. A at 133:9-134:17; Appx. Ex. G.  Manor House never laid off any of these younger employees. *See* Appx. Ex. B. at 77:1-78:3, 47:2-16, 49:12-18; Appx. Ex. 7 (Doc. 32-7); Appx. Ex. H at Answer to Interrogatory Nos. 3 and 4.[4]

---

[4] The document found at Manor House's Exhibit 7 (Doc. 32-7) identifying employees whose employment has been terminated or discontinued from August 2022 up until the present is an updated version of the document referenced in response to Manor House's Answers to Interrogatory Nos. 3 and 4.

9.      Mr. Backus admitted that Andrew Pandullo (approximately 38 years old) and David Pandullo (approximately 34 years old) performed Mr. Pepke's job duties as Lead Installers after Mr. Pepke was no longer employed by Manor House.  *See* Appx. Ex. B at 121:5-15; Appx. Ex. A at 133:17-20, 133:24-.134:1.

10.     Mr. Pepke testified that while at Manor House he "was always working.  I was always busy.  I always had work to do there whether it was service work, templating, installation, any kind of work, [and I was] cross-trained."  Appx. Ex. A at 89:1-8.

11.     Manor House had recently re-hired two younger employees within the granite installation department and who were part of Mr. Pepke's crew:  Joshua Ward (32 years old) and Christopher Price (31 years old), approximately 2 months and 1 year respectively prior to when Mr. Pepke was let go.  *See* Appx. Ex. G; Appx. Ex. A at 61:15-62:11, 134:3-7.  Although not part of Mr. Pepke's typical crew, Manor House also hired three other individuals who performed work within the granite installation department:  Roman Backus (20 years old) in October 2022, Adonis Ciocca (19 years old) in November 2022, and Joshua Charles (32 years old) in June 2023.  *See* Appx. Ex. G

12.     Mr. Backus never asked Mr. Pepke to come back to work for Manor House, even though Mr. Backus admitted that there was a need in May 2024 to bring Mr. Pepke back because of "sales and workload."  Appx. Ex. B at 41:10-43:20.  Mr. Backus' purported reason for not recalling Mr. Pepke was that he had found a new job.  *See id.*  However, Mr. Pepke believed that Mr. Backus was never going to call him back:  "I felt, you know, the statement that I'm 60 years old, Jeff was done with me, Jeff Backus was done with me, and he was going to let the younger guys work and give them the work." Appx. Ex. A at 57:15-59:1; *accord id.* at 131:23-132:9.

13.     Manor House hired employees within the granite department following Mr.

Pepke's employment with Manor House, and at Mr. Backus' deposition, Mr. Backus admitted

that they were currently looking for another person within the granite department and, in fact,

had just hired someone on May 15, 2024 to work within the granite department.  *See* Appx. Ex.

B at 42:16-43:6, 44:5-8, 63:18-65:3, 65:7-17.

14.     A couple weeks prior to the end of Mr. Pepke's employment with Manor House,

Mr. Backus conducted Mr. Pepke's annual review in July 2023.  *See* Appx. Ex. A at 91:14-

92:22.  During the annual review, Mr. Backus made several statements to Mr. Pepke concerning

his age:

- ***When are you retiring***? *see* Appx. Ex. D at Interrog. Response No. 10;

- ***You're getting up there in age*** and ***you are 60 years old***, *see id.*; and

- "Oh, well, come on.  Give me a time.  How long are you going to stick around?"
  Append Ex. A at 92:13-16.

Mr. Pepke testified that during this annual review meeting, Mr. Backus was "pretty much being

aggressive with me" and that Mr. Backus informed him he was not going to give him an increase

to his hourly wage.  *Id.* at 92:15-22.

15.     Earlier in 2023, specifically on Mr. Pepke's birthday in February 2023, Mr.

Backus publicly announced in Manor House's shop that Mr. Pepke was now 60 years old.  *See*

*id.* at 127:23-128:11.  Mr. Pepke explained that Mr. Backus was "very boisterous" and [l]ike he

was screaming it out in the shop announcing it was my birthday," *id.* at 127:23-128:11, and he

also announced that "Oh, Bill Pepke is 60 years old.  He's got seven more years until Social

Security.  He's going to be here seven more years," *id.* at 127:18-128:2.

16.     Mr. Pepke explained multiple times during his deposition when asked about

Manor House's sales numbers that "I did not get involved with any of the sales, and I couldn't

tell you figures.  That was not my job role," *id.* at 65:5-12, that he was "not involved in any of

that," *id.*at 65:14-17, and that he "was not involved in the numbers," *id.*at 66:9-14.  Manor House

incorrectly asserts in its Statement of Facts that Mr. Pepke "agrees that he has no basis to

challenge or disagree with information contained within the aforementioned business records."

Doc. 31 at ¶ 18.  The deposition testimony that Manor House cites, which is the same testimony

cited within this paragraph, does not support Manor House's assertions.

17.     Although Mr. Pepke testified that he believes he saw the same two documents

attached at Manor House's Appx. Ex. 4 and 5 regarding Manor House's sales during the August

7th meeting, *see* Appx. Ex. A at 63:10-24, 65:18-22, Mr. Backus testified that these documents

were *not* the documents that he showed to Mr. Pepke at that meeting, *see* Appx. Ex. B at 81:13-

82:7.  Manor House's General Manager, James Kladnik, who oversees the company's financials

and sales, created these two documents, and he also testified that these documents were created

*after* Mr. Pepke's employment.  *See* Appx. Ex. E at 8:3-9:1, 22:23-23:12, 24:15-25:10, 25:16-

26:23, 29:6-9.  Moreover, Mr. Kladnik testified that one of those documents, the one bates-

numbered DEF-43 (found at Appx. Ex. 4), was created for purposes of this lawsuit.  *See* Appx.

Ex. E at 24:21-25:10,

18.     Mr. Kladnik testified that one of the two documents relied upon by Manor House

in support of adverse business conditions which is bates-numbered DEF-43 (found at Appx. Ex.

4), shows "installed **sales** for the granite department per month," Appx. E at 22:23-24:6, and the

other document that Manor House also relies upon which is bates-numbered DEF-44 (found at

Appx. Ex. 5) shows "Manor House as a company's **sales** for each month, what we sold each

month," App. Ex. E at 27:2-21; *accord* Appx. Ex. F (copy of DEF-43-44 which was Exhibit 9 at

Mr. Kladnik's deposition).  Both documents have never been audited by a third party.  Appx. E

at 25:11-15, 26:19-27:1.

19.     Although Mr. Pepke secured new employment after his employment with Manor House ended, he works less overtime at his current job in comparison to his employment at Manor House.  *See* Appx. Ex. A at 35:15-24.  Mr. Pepke produced an expert report quantifying the estimated amount of his future lost earnings.  *See* Doc. 29-1.  Mr. Pepke had planned on working at Manor House until he was 67 years old so that he could receive full Social Security.  *See* Appx. Ex. A at 60:12-16.

20.     There were other employees at Manor House who, like Mr. Pepke, also received an expense check.  *See* Appx. Ex. B at 80:1-81:9.

21.     Contrary to Manor House's Statement of Facts found at paragraph 9, *see* Doc. 31 at ¶ 9, Mr. Pepke never testified that Mr. Backus explained to him that the schedule "was extremely light."  Appx. Ex A at 55:10-56:1.  Instead, Mr. Pepke responded that Mr. Backus "did say it slowed down, yes" which seems to be, but is not entirely clear, in reference to the portion of the question about whether Mr. Backus had conveyed that there were "reduced sales in June and July."  *Id.*

22.     Contrary to Manor House's Statement of Facts found at paragraph 20, Mr. Pepke never testified that Mr. Backus stated that he "would be interested in bringing Mr. Pepke back if business conditions improved."  Doc. 31 at ¶ 20.  Instead, the deposition cited by Manor House states:  "Well, I'll just see how work goes six or eight weeks, see how the schedule is.  And he also mentioned, you know:  You're 60 years old, Bill.  I'm going to let the younger guys work.  I'm going to give them the work, which I was devastated by."  Appx. Ex. A at 57:7-14.

## III.    <u>STANDARD OF REVIEW</u>

This Court previously provided the summary judgment standard in *Beltz v. University of Pittsburgh*, 2021 WL 5920807, 2021 U.S. Dist. LEXIS 23920, at *4-6 (W.D. Pa. Dec. 15, 2021)

(Ranjan, J.).  In employment discrimination cases, summary judgment should be used sparingly.
*See Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 369 (3d Cir. 2008).

IV.   <u>**LEGAL ANALYSIS & ARGUMENT**</u>

Mr. Pepke must prove by a preponderance of the evidence that age more likely than not
had a "determinative influence," *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176, 129
S. Ct. 2343 (2009) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)) or that age
was a "determinative factor" in Manor House's adverse employment decision, *see Kairys v. S.
Pines Trucking, Inc.*, 75 F.4th 153, 161 (3d Cir. 2023).  Indeed, the Third Circuit's Model Jury
instructions for the ADEA provide that a plaintiff must prove by a preponderance of the evidence
that age was a "determinative factor" in a defendant's adverse employment decision.  *See* Third
Circuit Model Jury Instruction, 8.1.1., Elements of an ADEA Claim – Disparate Treatment.  As
Manor House correctly points out in its motion, a plaintiff does not need to prove that age was
the "sole" reason for an adverse employment action.  *See* Doc. 31 at 8; *accord Scanlon v. Jeanes
Hospital*, 319 Fed. Appx. 151, 155 (3d Cir. 2009) (jury instruction that age must be a
determinative factor but does not have to be the sole factor was not in error).

   **A. There is sufficient direct evidence for a reasonable jury to find that Mr. Pepke's
   age was a determinative factor in Manor House's adverse employment decision.**

Mr. Backus' statements to Mr. Pepke about his age and his decision to retain younger
employee during the August 7, 2023 meeting are direct evidence of age discrimination.  During
the August 7 meeting, Mr. Backus, Manor House's President, told Mr. Pepke: "***You're 60 years
old, Bill.  I'm going to let the younger guys work.  I'm going to give them the work.***"  Also,
during that same meeting Mr. Backus told Mr. Pepke that **"the younger guys need the work,"**
and "**the younger employees live pay-to-pay and they are the future of the company**" and
that his "**work time was limited**."  Further, during Mr. Pepke's annual review a couple weeks

earlier, Mr. Backus made additional statements reflecting his bias concerning Mr. Pepke's age when he stated "are you retiring," and "you're getting up there in age," and "you are 60 years old." These statements provide direct evidence of Mr. Backus' discriminatory bias concerning Mr. Pepke's age and his conscious decision to retain the younger employees on Mr. Pepke's crew instead of him.

Similar statements made by corporate officers/supervisors in other age discrimination cases have likewise been found to constitute evidence of direct age discrimination.

In *Seretti v. Morrow Ford Lincoln Mercury, Inc.*, Judge Lenihan held a statement that the "Plaintiff's age had caught up with him" in that case "could be construed by a reasonable jury as directly reflecting an illegal basis for Plaintiff's termination" and a reasonable jury "could conclude that [the supervisor] made the statement for the very purpose of providing Plaintiff with the reason for his termination." 2012 WL 933058, 2012 U.S. Dist. LEXIS 36367, at *13-14 (W.D. Pa. March 19, 2012). The Court noted that there "is no 'heightened evidentiary requirement' for plaintiffs to satisfy their burden of persuasion through 'direct evidence' as opposed to 'circumstantial evidence.'" *Id.* at *8 (quoting *Gross*, 129 S. Ct. 2343, 2351 n.4).

Likewise, in *Mummey v. Quad/Graphics Printing Corp.*, the Court found that a statement from an employee's direct supervisor that he was getting eliminated in favor of retaining two younger individuals as well as comments such as "when are you going to retire?" and "when are you going to find a job?" constituted direct evidence that "may allow a reasonable jury to infer that [the supervisor] had a discriminatory attitude about age and that his attitude was causally related to the decision to fire plaintiff." 2014 WL 3557177, 2014 U.S. Dist. LEXIS 97452, at *9-11 (M.D. Pa. July 18, 2014). The Court found that the plaintiff could prove age was a determinative factor in his termination even though the defendant argued that the plaintiff's

employment was terminated because of a company-wide restructuring effort.  *See id.* at *8-11, 16-17.

Also, in in *Glendening v. Fair Acres Geriatric Center*, an instructor for the defendant told the plaintiff that he "would not be able to do the work as a CNA and that Plaintiff should resign and go home and enjoy [his] retirement."  2019 WL 5550977, 2019 U.S. Dist. LEXIS 185965, at *2-3 (E.D. Pa. Oct. 28, 2019).  The plaintiff argued these statements constituted direct evidence of age discrimination because they suggested a "negative view of Plaintiff's age, and argued that the employee would not tell a 30- or 40-year old to resign and go home and enjoy retirement." *Id.* at *2, 8.  The Court agreed and explained why:  "[t]he alleged statement of Nurse DeCeccio, instructor for the training program, that Plaintiff should go home and enjoy retirement, amounts to overt or explicit evidence which directly reflects discriminatory bias by a decision maker."[5] *Id.* (internal quotations omitted).

In *LeGrand v. PPL Susquehanna, LLC*, the Court found there was direct evidence of age discrimination based on a single comment made to an employee when communicating the adverse employment decision:  "I do not think you'll be successful.  I think that training is a young man's game."  *LeGrand v. PPL Susquehanna LLC*, 2015 WL 2070264, 2015 U.S. Dist. LEXIS 57448, at *26 (M.D. Pa. March 23, 2015), *report and recommendation adopted in part*, *LeGrand v. PPL Susquehanna, LLC*, 2015 WL 2090202, 2015 U.S. Dist. LEXIS 57596, at *12. The Court explained this comment was direct evidence because it came from a decision-maker concerning the adverse employment decision, was "not temporally remote" from the adverse employment decision, and "if accepted as true by the trier of fact, is indicative of age

---

[5] Although this case dealt with a motion to dismiss, it is still instructive as to how courts have analyzed what statements constitute direct evidence of age discrimination.

discrimination in the making of his discretionary decision to not allow Plaintiff to enroll in this class." 2015 U.S. Dist. LEXIS 57596, at *12-13.

It is important to look at the context in which a statement purportedly reflecting age discrimination is made. Judge Lenihan explained that the Third Circuit has "instructed that certain considerations are probative of discrimination when biased remarks are reflected in the record." 2012 U.S. Dist. LEXIS 3637, at *11-12. In particular:

> These considerations include "the speaker's position in the organization, the content and purpose of the statement, and the 'temporal connection between the statement and the challenged employment action.'" quoting *Hodczak v. Latrobe Specialty Steel Co.*, No. 11-1085, 451 Fed. Appx. 238, 2011 U.S. App. LEXIS 23052, 2011 WL 5592881, at *2 (3d Cir. Nov. 17, 2011) (quoting *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997)).

*Seretti,* 2012 U.S. Dist. LEXIS 36367, at *11-12. Judge Lenihan found that an analysis of these three considerations in *Seretti* led to the conclusion that the statement that "Plaintiff's age had caught up with him" was direct evidence of age discrimination and that "a reasonable jury *could* conclude that his ageist remark made during Plaintiff's termination was the motivation for Plaintiff's discharge." *See id.* at *13-14 (emphasis supplied).

Here, the discriminatory age statements made by Mr. Backus during the August 7th meeting satisfy these three important considerations found by the Third Circuit to be probative of discrimination:  1) they were made by Manor House's President, the individual who made the decision to end Mr. Pepke's employment; 2) they directly pertain to the reason that Mr. Pepke was being let go; and 3) they were made during the same day that Mr. Pepke's employment with Manor House ended.

Manor House argues that Mr. Backus' ageist statements cannot be proof of age discrimination because Mr. Pepke admits that Manor House's purported business justifications were also communicated to him during the August 7, 2023 meeting and that Mr. Pepke is unable

to dispute that sales were declining and that Mr. Pepke was the highest paid employee within the granite installation department.  However, a reasonable jury can find that Manor House's sales were declining, that Mr. Pepke had the highest hourly rate among his crew members, and still conclude that Mr. Backus selected Mr. Pepke, and not someone else, to layoff, because of Mr. Pepke's age.

As is often true in employment discrimination cases, employers will provide evidence of an underlying business reason for their adverse employment decision, such as a mass layoff or declining sales or the elimination of a certain position, but such evidence does not prevent a jury from still concluding that age discrimination was the determinative factor behind the employment decision pertaining to a specific employee.  *See, e.g.*, *Mummey*, 2014 U.S. Dist. LEXIS 97453, at *2, 8-11 (statement by direct supervisor constituted direct age discrimination even though defendant alleged that plaintiff's senior financial analyst position was eliminated as part of a reduction in force); *Sesso v. Mercy Suburban Hospital*, 2013 WL 961625, 2013 U.S. Dist. LEXIS 34401, at *11-13 (E.D. Pa. March 13, 2013) (recognizing that although a jury might credit defendant's arguments that decision to terminate a doctor's contract was "an economic and strategic one," the jury could still find that "retirement-related remarks" demonstrated that age discrimination was a determinative factor).

The three primary cases Manor Houses rely upon in its motion are easily distinguishable.

In *Kelly v. Moser, Patterson & Sheridan*, the Third Circuit, in a non-precedential opinion, found that an employee (who was an attorney) was unable to demonstrate that his former employer's "substantial evidence" for terminating his employment was pretext when "the ***only*** evidence in this case that age may have played any role in the law firm's decision" was a note in the employee's personnel file that stated "older & better paid /younger & cheaper."  348 Fed.

Appx. 746, 751 (3d Cir. 2009) (emphasis supplied). [6]  Significantly, it was "**undisputed** that the client's dissatisfaction with [plaintiff's] work and the consequent financial loss, which are legitimate concerns under the ADEA, motivated the decision." *Id.* at 750 (emphasis supplied). Further, the Court found that there is "more than substantial evidence that the law firm terminated [plaintiff's] employment for non-age reasons." *Id.* at 750.  This included (i) a prior lawsuit against his employer; (ii) failure to meet billable-hours; (iii) ongoing problems working with his legal secretary; and (iv) admission during deposition testimony that the law firm terminated his employment because of a client's dissatisfaction with his work and a loss of over $73,000 to the law firm.  *See id.*  In contrast, in this lawsuit, Mr. Pepke did not testify that Manor House's purported business justification was the reason behind his purported layoff nor is there "substantial evidence" in this case concerning issues with Mr. Pepke's work performance justifying his purported layoff.

In *Palmer v. Britton Industries, Inc.*, a non-precedential opinion, the Thid Circuit found that a single comment from a General Manager stating that an employee was "too old to change industries" during a conversation criticizing the employees' sales performance was not direct evidence of age discrimination.  662 Fed. Appx. 147, 149 (3d Cir. 2016).  The Court reached this conclusion because of the context during which the statement was made:  the General Manager "cited [plaintiff's] age as a factor potentially contributing to his poor sales performance, during a meeting about that performance – a meeting at which, as the District Court aptly noted, [the General Manager] held an *older* salesman up as a positive example for [the employee] to emulate." *Id.* at 151 (emphasis original).  Moreover, the plaintiff in *Palmer* "admitted" that the

---

[6] The Court never determined whether the handwritten note constituted "direct evidence." *Id.* at 750 n.8.

defendant "had other reasons besides age to fire him." *Id.* at 152-53.  Thus, the facts of *Palmer* are significantly different from the evidence in this case where the August 7th statements from Mr. Backus were made during a meeting for the express purpose of informing Mr. Pepke as to why he was being let go.

In *Mitchell v. University of Pittsburgh*, again another non-precedential opinion, the Third Circuit found that a single statement made when a supervisor handed him an employee a copy of a collective bargaining agreement and stated that he could "take advantage of retirement" was not direct evidence of age discrimination.  2023 U.S. App. LEXIS 32746, at *4 (3d Cir. 2023). The Third Circuit agreed with the District Court's analysis as to why the context in which this statement was made did not demonstrate age discrimination:  "the retirement provision of the collective agreement that would cover [plaintiff] after his demotion had changed since he had last been covered by it.  Informing [plaintiff] of his retirement options was not direct evidence of discrimination because this single instance of communicating relevant information to an employee did not show without inference or presumption that age discrimination was the but-for cause of [plaintiff's] demotion." *Id.*  In the instant case, Mr. Backus' statements made in the context of the meeting explaining why Mr. Pepke was being let go and also during his annual review are distinctly different.  Mr. Backus' statements speak for themselves and, on their face, demonstrate his discriminatory bias as to Mr. Pepke's age and his view that younger employees should be given the work instead.

Manor House will have the opportunity at trial to argue that its purported business reasons were the real reason Mr. Pepke was laid off.  However, it is up for the jury to determine whether Mr. Backus' statements demonstrate that Mr. Pepke's age was indeed a determinative factor behind Manor House's adverse employment decisions.  As such, at the summary judgment

stage, the Court should decline from making any credibility determinations as to what really motivated Mr. Backus' decision. *See Beltz*, 2021 U.S. Dist. LEXIS 239209, at *19 ("at the summary judgment stage, it is not for the Court to make credibility determinations.").

> **B. Under the *McDonnell-Douglas* framework, there is sufficient evidence for a reasonable juror to find that Mr. Pepke's age was a determinative factor in Manor House's adverse employment decision.**

If there is direct evidence of age discrimination, then Mr. Pepke does not need to rely upon the *McDonnell Douglas* framework in order to prove age discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 997 (2002) ("if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case.").

However, if the Court finds that there is not direct evidence of age discrimination, Mr. Pepke submits that he can still utilize the *McDonnell Douglas* burden-shifting framework to prove that age was a determinative factor in Manor House's adverse employment decision. A plaintiff may properly attempt to prove age discrimination using direct evidence and also circumstantial evidence. In other words, a plaintiff does not need to choose one method at the exclusion of the other within a lawsuit in attempting to establish age discrimination. *See, e.g.*, *Mummey*, 2014 U.S. Dist. LEXIS 97453, at *8-22 (denying summary judgment and finding that plaintiff could proceed to prove age discrimination using either direct evidence or circumstantial evidence); *LeGrand*, 2015 U.S. Dist. LEXIS 57596, at *12-14 (same); *Frantz v. Ferguson Enterprises, Inc.*, 2009 U.S. Dist. LEXIS 6241, at *6-19 (E.D. Pa. Jan. 28, 2009) (same).

Manor House admits in its motion that Mr. Pepke meets three of the four *McDonnell Douglas* factors required to present a prima facie case. *See* Doc. 31 at 14. As to the fourth factor, Manor House contends that "there is no evidence suggesting that [Mr. Pepke] was

replaced by a younger individual." *Id.* That is not true for a few reasons:

- First, Mr. Backus testified during his deposition that Mr. Pepke's job duties were in fact provided to younger employees.

- Second, Manor House retained all of the younger employees on Mr. Pepke's crew.

- Third, Mr. Backus' statement to Mr. Pepke – ***I'm going to let the younger guys work. I'm going to give them the work*** – in and of itself provides evidence satisfying this fourth factor as it is an admission that Manor House intended to give the work to the younger employees.

- Fourth, and perhaps more significantly, the fourth element can be satisfied by pointing to "facts relating to the adverse action that, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Kairys v. Southern Pines Trucking, Inc.*, 2021 WL 2073797, 2021 U.S. Dist. LEXIS 97600, at *25 n. 5 (W.D. Pa. May 24, 2021) (internal quotations omitted) (Ranjan, J.); *accord Bechtle v. County of Delaware*, 2022 WL 19272, 2022 U.S. Dist. LEXIS 48, at *10-11 (E.D. Pa. Jan. 3, 2022) (same); *McManus v. Teva Pharmaceuticals USA, Inc.*, 2021 WL 3617160, 2021 U.S. Dist. LEXIS 153502, at *11-12 (E.D. Pa. Aug. 13, 2021) (same).

Accordingly, Plaintiff has presented a *prima face* case.

Continuing within the *McDonnell Douglas* analysis, Manor House articulates its purported legitimate, non-discriminatory reason:  "Mr. Pepke's layoff was necessitated by adverse business conditions, and there is no dispute that granite department revenues were down, overall sales were drastically reduced, upcoming installation schedules were light, and Mr. Pepke was the highest paid employee in his department."  Doc. 31 at 15

Mr. Pepke can show that Manor House's proffered reason for ending his employment was pretextual by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally finder them unworthy of credence."  *Fuentes v. Perskie*, 32 F.3d 758, 765 (3d Cir. 1994) (emphasis original) (internal quotations omitted).  In particular, Mr. Pepke can point to evidence allowing him to show pretext under the two common methods utilized by employees in discrimination cases: 1) evidence that would allow a factfinder to disbelieve Manor

House's proffered reason for its adverse employment action; and 2) evidence allowing a factfinder to believe that age discrimination was more likely than not a determinative factor for the adverse employment action.

With respect to the first method of establishing pretext, Mr. Pepke has multiple pieces of evidence that he can point to, if necessary, that could allow a jury to disbelieve Manor House's proffered reason. Preliminarily, Mr. Pepke can again rely on Mr. Backus' discriminatory statements during the August 27, 2023 meeting and during the July 2023 annual review meeting in order to show pretext. *See Sesso v. Merch Suburban Hospital*, No. 11-5718, 2013 U.S. Dist. LEXIS 34401, at *10 (E.D. Pa. March 13, 2013) (plaintiff "may use the same evidence to establish a *prima facie* case of discrimination and to discredit Defendant's proffered reasons.").

These statements from Mr. Backus could allow a factfinder to disbelieve Manor House's proffered explanation and allow the jury to find that unlawful discrimination was a determinative factor in its adverse employment decision. *See Bechtle*, 2022 U.S. Dist. LEXIS 48, at *11-12 (ageist statements from several employees "may suggest a pattern that could support a finding of age discrimination); *McManus*, 2021 U.S. Dist. LEXIS 153502, at *14-15 ("supervisor who has made numerous age-discriminatory comments to an employee and participates in the decision-making process to terminate them creates a genuine issue of material fact sufficient to allow Plaintiff's age discrimination case to be presented to a jury"); *Sesso*, 2013 U.S. Dist. LEXIS 34401, at *13 (statements made by CEO and CFO that they expected employee to retire could allow jury to either disbelieve defendant's asserted reasons or reflect "evidence of a discriminatory animus and that the discriminatory animus was a determinative factor.").

Moreover, the jury can find that the reason Mr. Backus is refusing to tell the truth about what he really said during the August 7th meeting is because he is trying to cover-up his actual

bias as to Mr. Pepke's age. *See Beltz*, 2021 U.S. Dist. LEXIS 239209, at 18 ("an inference of pretext may arise if the plaintiff can raise suspicions with respect to the defendant's credibility.") (quoting *Bray v. Marriott Hotels*, 110 F.3d 986, 990 (3d Cir. 1997)).

In addition to Mr. Backus' statements, Mr. Pepke could rely upon additional evidence to cast doubts upon Manor House's proffered reason:

- Mr. Pepke testified that one of the reasons why he did not agree that he was laid off from Manor House due to a slow-down in work flow was because there were employees who were re-hired within the granite installation department in short proximity to his purported lay-off. Appx. Ex. A at 61:15-62:11. If Manor House's sales were really that slow, a jury could question why Manor House re-hired previous employees within the granite department prior to letting go of Mr. Pepke. In addition, there were at least three other new hires within the granite department earlier in 2023 before Mr. Pepke was let go, which also cast some doubt concerning Manor House's contention that *Mr. Pepke* needed to be let go before of adverse business conditions.

- Mr. Backus testified in May 2024 that there was a business need to recall Mr. Pepke back because of "sales and workload" but that he allegedly decided not to recall him because Mr. Pepke had already found another job. Further, Mr. Pepke testified that he "was always working. I was always busy. I always had work to do there whether it was service work, templating, installation, any kind of work, [and I was] cross-trained." Thus, a jury could believe that Mr. Backus' purported reason for not recalling Mr. Pepke is false and that Mr. Backus did not want to recall Mr. Pepke because of his age.

- A jury may find it concerning that the sales documents that Mr. Pepke recalls seeing at the May 7, 2023 meeting were according to Mr. Backus and Manor House's General Manager not created until after Mr. Pepke was let go, again raising issues as to Manor House's credibility.

In essence, this evidence, which "poke[s] enough holes in an employer's stated reasons can lead a jury to infer that a nefarious motive really was present." *Beltz*, 2021 U.S. Dist. LEXIS 239209, at *15.

With respect to the second method of establishing pretext, some of the same evidence just identified above can also be relied upon to demonstrate that age discrimination was more likely than not a determinative factor for Manor House's adverse employment decision. Again, Mr. Backus' statements to Mr. Pepke during the August 7th meeting and during Mr. Pepke's

annual review could allow a jury to conclude that age was the determinative reason behind

Manor House's employment decision.  *See Beltz*, 2021 U.S. Dist. LEXIS 239209, at *19 (finding

that a comment made by a decisionmaker potentially regarding the plaintiff's age was relevant to

pretext, specifically concerning "evidence tending to show that discrimination played a role" in

the defendant's decisions).  The jury might also find it probative of discriminatory bias, when

viewed in conjunction with Mr. Backus' subsequent ageist statements, that Mr. Backus shouted

earlier in 2023 that it was Mr. Pepke's birthday and that he was now sixty years old.

In addition to these statements, Mr. Pepke could rely upon additional evidence:

- Manor House's decision to not lay off any of the younger employees on Mr. Pepke's crew could allow a jury to believe that discrimination played a determinative role in Manor House's decision as to Mr. Pepke.

- Mr. Backus' admission that Mr. Pepke's job duties were performed by two younger employees subsequent to Mr. Pepke's employment could likewise allow a jury to make a finding of age discrimination.

- The jury could find that Manor House's recent hire of multiple younger employees was done so that Mr. Pepke could be let go because of Mr. Backus' bias as to Mr. Pepke's age.

In its motion, Manor House makes passing reference to evidence that it recalled other

employees who were over the age of 40.  *See* Doc. 31 at ¶ 26.  It is not clear what relevance

Manor House believes this has for purposes of its motion, but Mr. Pepke submits that it is not

relevant in determining whether he has presented sufficient direct or circumstantial evidence at

the summary judgment stage.  *See Nagle v. Comprehensive Women's Health Services, P.C.*,

2018 WL 1473833, 2018 U.S. Dist. LEXIS 9722, *34 n.4 (M.D. Pa. Jan. 19, 2018)[7] ("The

defendant also points to evidence in the record regarding the ages of other employees on staff in

---

[7] *Report and recommendation adopted, Nagle v. Comprehensive Women's Health Services, P.C.*, 2018 WL 1474545, 2018 U.S. Dist. LEXIS 49655 (M.D. Pa. March 26, 2018).

order to support its assertion that Ms. Nagle's age had nothing to do with her being fired.  We agree with the plaintiff that this evidence is not relevant for purposes of evaluating the merits of the summary judgment motion . . .").

It bears repeating again that whether Manor House was actually experiencing declining sales does not speak to the reason behind Manor House's decision for why it selected *Mr. Pepke*, and not someone else, as the employee that should be allegedly laid off.  The jury can find that Manor House was experiencing adverse business conditions and that Mr. Pepke was the highest paid employee on his crew, and conclude that Mr. Backus decided that *Mr. Pepke*, and not someone else, was the employee that should be let go because he was 60 years old so that the younger employees could continue working.

## V.   <u>CONCLUSION</u>

Based on the above, Mr. Pepke respectfully requests that the Court deny Manor House's motion.

 Date:  July 27, 2024                                        Respectfully,

                                                             /s/ Mark J. Gottesfeld
                                                             Peter Winebrake
                                                             Mark J. Gottesfeld
                                                             WINEBRAKE & SANTILLO, LLC
                                                             715 Twining Road, Suite 211
                                                             Dresher, PA 19025
                                                             (215) 884-2491
                                                             mgottesfeld@winebrakelaw.com

                                                             *Attorneys for Plaintiff*