IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| WILLIAM PEPKE, | : | |
| Plaintiff, | : | 2:23-cv-02089-NR |
| | : | |
| v. | : | |
| | : | |
| MANOR HOUSE KITCHENS, INC., | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS
MOTION FOR ATTORNEY'S FEES AND COSTS**

After a three-day jury trial, William Pepke prevailed in this age discrimination lawsuit arising under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"). *See* Doc. 78. The jury awarded Mr. Pepke $30,000.00 in compensatory damages, $11,500.00 in back pay, and $26,148.50 in front pay. *See id.* Also, because the jury deemed Manor House's ADEA violation "willful," *see id.*, the Court awarded Mr. Pepke liquidated damages of $11,500.00. *See* Doc. 79. Accordingly, the Court entered judgment in Mr. Pepke's favor for $79,148.50. *See* Doc. 80.

Having prevailed, Mr. Pepke now moves – pursuant to Federal Rule of Civil Procedure 54, 29 U.S.C. §§ 216(b) and § 626(b), and 43 P.S. § 962(c.2) – for the recovery of $213,550.00 in attorney's fees and $10,617.22 in costs as the prevailing party. Such a recovery is mandatory under the ADEA, *see Blum v. Witco Chemical Corp.*, 829 F.2d 367, 377 (3d Cir. 1987), and permissible under the PHRA, *see* 43 P.S. § 962(c.2).

**I.     BACKGROUND**

The Court is intimately familiar with the procedural history and facts in this case, having presided over a 3-day jury trial; however, a brief summary of the litigation may be helpful.

This is an age discrimination case wherein Mr. Pepke alleged that Manor House laid him off because of his age. Mr. Pepke filed his EEOC and PHRC charge in August 2023 and obtained a right-to-sue letter shortly thereafter. *See* Doc. 1.

Prior to filing suit, Mr. Pepke reached out to Manor House in the hope of negotiating a pre-suit resolution. *See* Declaration of Mark J. Gottesfeld ("Gottesfeld Dcl.") (Doc. 81-1) at ¶ 25. Manor House – represented by prior counsel – rejected Mr. Pepke's settlement overtures in a terse letter threatening Rule 11 sanctions and other penalties if Mr. Pepke filed suit. *See id.*[1]

Undeterred, Plaintiff commenced suit under the ADEA and the PHRA. *See* Doc. 1. The parties exchanged initial disclosures and attended a Rule 16 conference. Thereafter, the parties served and responded to discovery requests and produced responsive documents. There were some discovery disputes, but the parties were able to resolve them without the Court's intervention. Manor House took the depositions of William Pepke and Karen Pepke, and Mr. Pepke took the depositions of Jeffrey Backus, Jim Kladnik, and Dan Davis. Both parties retained economic experts and produced expert reports.

After the close of discovery, Manor House moved for summary judgment. *See* Doc. 30. Therein, Manor House argued that Mr. Pepke failed to present either (i) direct evidence of age discrimination or (ii) indirect evidence of age discrimination that satisfies the *McDonnell Douglas* burden-shifting framework. *See* Doc. 31. Mr. Pepke opposed the motion and, in doing so, marshalled both direct and circumstantial evidence as to why age was a determinative factor behind his layoff decision. *See* Doc. 34. Responding to Manor House's motion for summary judgment was no small undertaking, because if the Court had agreed with Manor House's

---

[1] It is doubtful that Manor House's *current* counsel – who are most courteous and professional – would have drafted such a letter.

arguments, Mr. Pepke's claims would have been dismissed with prejudice.

The Court denied Manor House's motion for summary judgment after finding that a "reasonably jury could view some of Mr. Backus's alleged statements as sufficient direct evidence that but-for Mr. [Pepke's] age, Manor House wouldn't have laid him off." Doc. 41 at p. 2. The Court did not decide whether Mr. Pepke had presented sufficient indirect evidence under the *McDonnell Douglas* framework, finding it was not necessary to do so. *See* Doc. 41 at p. 3. Moreover, although the Court denied summary judgment, it recognized that plaintiffs can face a "high hurdle" in proving age discrimination based on direct evidence. *See id.* at p. 3 (quoting *Palmer v. Britton Industries*, 662 Fed. Appx. 147, 150 (3d Cir. 2016)).[2]

Both before and after summary judgment, Manor House steadfastly refused to engage in settlement discussions. *See* Gottesfeld Dcl. (Doc. 81-1) at ¶¶ 25-28. Simply stated, Manor House believed it would win and insisted on a jury trial. Mr. Pepke and his counsel respect Manor House counsel's vigorous advocacy. However, as must be recognized, Manor House's litigation posture required Mr. Pepke's counsel to litigate just as vigorously. As a Virginia trial judge reviewing a post-trial fee petition observed:

> Defendants fought this case vigorously. There is nothing wrong with this; indeed, it is entirely legitimate and appropriate, and was a good example of our adversarial system at work. However, this figures prominently, in the Court's mind, in determining whether the time spent and work put on this case by Plaintiffs' counsel was reasonable, and I do not see how Defendants expected Plaintiffs would respond and prosecute the suit other than just as vigorously.

*Payne v. City of Charlottesville*, 104 Va. Cir. 145, 104 Va. Cir. LEXIS 9, at *10-11 (Va. Cir. Ct.

---

[2] Generally speaking, employment discrimination is especially difficult to prove. *See*, *e.g.*, *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716 (1983) ("All courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult."); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) ("Discriminatory conduct is often subtle and difficult to prove.").

3

Jan. 21, 2020) (emphasis supplied).

The parties prepared for trial, and this work was substantial as it included, *inter alia*: reviewing the entire file to select trial exhibits, filing and responding to motions *in limine,* closely reviewing all deposition transcripts, drafting the *voir dire*, researching and drafting jury instructions, and preparing the witness list, exhibit list, and verdict slip. This of course does not include all of the other necessary preparations underlying a federal jury trial, including work spent in connection with preparing for opening statement, direct examinations, cross-examinations, closing argument, and other aspects of the trial.

Trial commenced on October 8, 2024. Mr. Pepke called three witnesses (himself, his wife, and an expert damages witness). Manor House countered with seven fact witnesses and an expert witness. In total, the parties introduced 15 exhibits into evidence.

On October 10, 2024, the jury entered a verdict in Mr. Pepke's favor. *See* Doc. 78. The jury awarded Mr. Pepke $30,000.00 in compensatory damages, $11,500.00 in back pay, and $26,148.50 in front pay. *See id.* Also, because the jury deemed Manor House's ADEA violation "willful," *see id.*, the Court awarded Mr. Pepke liquidated damages of $11,500. *See* Doc. 79. Accordingly, the Court entered judgment in Mr. Pepke's favor for $79,148.50. *See* Doc. 80.

## II.     ARGUMENT

Plaintiffs who prevail under the ADEA are entitled to *mandatory* attorney's fees and costs. *See Blum*, 829 F.2d 377 (citing 29 U.S.C. § 626(b) and observing that "Plaintiffs, having prevailed on the merits, are entitled to an award of attorney's fees for the time expended on their ADEA claims"); *accord Burgo v. Boulevard Autogroup, LLC*, 2024 WL 3625761, 2024 U.S.

4

Dist. LEXIS 136118, at *14 (E.D. Pa. Aug. 1, 2024).³  Meanwhile, the PHRA provides that "the court may award attorney fees and costs to the prevailing plaintiff." 43 P.S. § 962(c.2).  The fee/cost-recovery provisions serve an important public policy by enabling aggrieved employees to retain competent and motivated legal counsel.  *See Giedgowd v. Cafaro Group, LLC*, 2021 WL 4963532, 2021 U.S. Dist. LEXIS 205882, at *1 (E.D. Pa. Oct. 26, 2021) (Pennsylvania law "incentivizes lawyers to represent former employees who believe their relatively older age is a determinative or "but for" reason for their employer firing them"); *Middlebrooks v. Teva Pharmaceuticals USA, Inc.*, 2019 WL 936645, 2019 U.S. Dist. LEXIS 30530, at *1 (E.D. Pa. Feb. 26, 2019) ("Congress motivates lawyers to represent employees claiming their employer discriminated or retaliated against them by allowing federal judges to award reasonable fees and costs to compensate the lawyers.").

Because prevailing in civil rights and employment rights lawsuits can entail large investments of attorney time, it is not uncommon for counsel's statutory fee recovery to exceed the employee's underlying judgment amount. *See*, *e.g.*, *Hollobaugh v. Roberts*, 2022 WL 16927713, 2022 U.S. Dist. LEXIS 205767, *3, 5 (W.D. Pa. Nov. 14, 2022) ($98,262.50 fee after plaintiff wins $10,000); *Turco v. Zambelli Fireworks Manufacturing Co.*, 2022 WL 395245, 2022 U.S. Dist. LEXIS 23607, *17 (W.D. Pa. Feb. 9, 2022) ($246,338.93 fee after plaintiff wins $15,000); *Watcher v. Pottsville Area Emergency Medical Services*, 559 F. Supp. 2d 516, 540 (M.D. Pa. April 28, 2008) ($224,573.75 fee after plaintiff wins $30,000).

---

³  The ADEA incorporates the remedies available to prevailing plaintiffs under FLSA Section 16(b) of the FLSA. *See* 29 U.S.C. § 626(b). FLSA Section 16(b), in turn, provides: "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

5

**A. Winebrake & Santillo, LLC has incurred $213,550.00 in reasonable attorney's fees.**

This Court recently described the general methodology applicable to determining a prevailing party's fees:

> The party seeking attorney's fees has the burden to prove its request is reasonable. To that end, the petitioner must submit evidence supporting the hours worked and the rates claimed. Once the party opposing the fees raises objections, the district court has a great deal of discretion to adjust the fee award in light of those objections. ... [T]he most critical factor is the degree of success obtained. The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Once the court determines the reasonable hourly rate, it multiplies that rate by the reasonable hours expended to obtain the lodestar.

*Kengerski v. County of Allegheny*, 2023 WL 3688222, 2023 U.S. Dist. LEXIS 93055, at *2 (W.D. Pa. May 26, 2023) (Ranjan, J.) (quoting *Hollobaugh v. Roberts*, 2022 WL 16927713, 2022 U.S. Dist. LEXIS 205767 (W.D. Pa. Nov. 14, 2022)). Courts often use the term "lodestar" to describe the reasonable attorney hours multiplied by the reasonable hourly rate, *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and the Third Circuit has observed that the lodestar methodology generates a fee that is "presumed to be the reasonable fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *see also Planned Parenthood v. AG*, 297 F.3d 253, 265 n.5 (3d Cir. 2002) ("A reasonable hourly rate multiplied by a reasonable number of hours expended – the 'lodestar' – is the presumptively reasonable fee.").

Employing the above methodology, Mr. Pepke's counsel from Winebrake & Santillo, LLC ("W&S") have incurred a reasonable attorney's fee of $213,550.00:

### 1. *W&S reasonably incurred 481.60 attorney hours.*

Mr. Pepke's counsel has maintained in its Filevine case management software contemporaneous time records in six-minute increments that document each attorney's hours

dedicated to this litigation. *See* Gottesfeld Dcl. (Doc. 81-1) at ¶¶ 20-22. These records have been provided for the Court's review and they provide in detail the work performed by Mr. Pepke's counsel throughout this litigation. *See id.* at Exhibit A. As indicated, Mr. Pepke's counsel has incurred a total of 511.60 hours working on this litigation as indicated in the column titled "Hours Incurred" in Exhibit A. *See id.* Some of the work includes, for example, pre-suit investigation, commencement of administrative charge, drafting of the Complaint, serving written discovery, meeting and conferring regarding discovery deficiencies, taking and defending depositions, opposing Manor House's motion for summary judgment, attendance of Court conferences, pre-trial submissions, trial preparation, attendance at trial, and preparation of this fee petition and accompanying brief. *See* Gottesfeld Dcl. (Doc. 81-1) at ¶¶ 20-22 and Exhibit A.

      Mr. Pepke is not seeking to recover for 30 of these hours based on the elimination 50% of the time dedicated to travel related to this case. *See* Gottesfeld Dcl. (Doc. 81-1) at ¶¶ 20-22 and Exhibit A.[4] Some Courts have allowed prevailing plaintiffs to recover for travel time. *See, e.g.*, *Haisley v. Sedgwick Claims Management Services*, 2011 WL 4565494, 2011 U.S. Dist. LEXIS 111826, at *30 n.5 (W.D. Pa. Sep. 29, 2011) (finding that a "fifty percent reduction in the hourly rate for travel time reasonable."); *Steward v. Sears, Roeback & Co.*, 2008 WL 1899995, 2008 U.S. Dist. LEXIS 34971, at *20 (E.D. Pa. April 29, 2008) (because "an attorney loses the opportunity to meet with other clients or perform other legal work when engaged in travel necessary to the case, this court will allow reimbursement for counsels' travel time at their full hourly rate."). However, other courts have not allowed recovery for travel time. *See, e.g.*, *Giedgowd*, 2021 U.S. Dist. LEXIS 205882, at *20-23. As a result, Mr. Pepke has eliminated 50% of the travel time incurred in this litigation. Because Mr. Pepke's counsel had to stay

---

[4] The reduction of these hours is reflected in the column titled "Hours Sought" in Exhibit A.

overnight at a nearby hotel blocks from the courthouse, this eliminated the need for travel time that would have been incurred to and from trial each day had Mr. Pepke's counsel, for example, been based out of Erie, PA. Moreover, as indicated in many of the time entries, a significant portion of the travel time was spent discussing strategy as Peter Winebrake ("Winebrake") and Mark Gottesfeld ("Gottesfeld") traveled together to and from the in-person pre-trial conference and to and from trial.

After these reductions are made, there are 481.60 hours that Mr. Pepke's counsel seeks recovery for that it submits are reasonable and warrant recovery based on counsel's success in this case.

### 2. Mr. Pepke's Counsel's Reasonable Hourly Rates Based on the Pittsburgh, Pennsylvania Market.

W&S has exclusively represented Mr. Pepke on a pure contingency basis. *See* Gottesfeld Dcl. (Doc. 81-1) at ¶¶ 3 and 17. Thus, W&S would have received nothing if Mr. Pepke lost at summary judgment or trial.

Mr. Pepke's counsel is submitting a declaration describing the firm's experience generally in addition to the individual credentials of the attorneys who tried this case. *See id.* at ¶¶ 3-16. As indicated, Mr. Pepke's counsel possesses substantial experience representing workers in employment litigation. *See id.*

Because Mr. Pepke's counsel works exclusively on a contingency fee basis, it does not send clients legal bills or charge them an hourly rate. *See id* at ¶¶ 3 and 17. However, W&S often submits hourly rates to federal and state courts in seeking the recovery of fees after either a plaintiff has prevailed under a fee-shifting statute or (as is more common) after a class or collective action lawsuit has been settled and the court must approve the requested attorney's fee. *See id.* at ¶¶ 17-18. In those circumstances, Mr. Pepke's counsel has adopted the hourly rates

described in the fee schedule published by Community Legal Services of Philadelphia ("CLS"). *Id.* As indicated in the cases cited within the undersigned counsel's declaration, Gottesfeld Dcl. (Doc. 81-1) at ¶ 18, n.2, numerous courts have awarded Winebrake and Gottesfeld with hourly rates pursuant to the CLS fee schedule.

Some Judges within this District have found the rates within the CLS to be, at a minimum, helpful in demonstrating the hourly rate within the Pittsburgh market. *See, e.g.*, *Kengerski*, 2023 U.S. Dist. LEXIS 93055, at *5 (noting that the requested hourly "rates are below the fee schedule established by Community Legal Services, Inc.."); *Turkovich v. Sally Beauty Supply LLC*, 2021 WL 767629, 2021 U.S. Dist. LEXIS 36174, at *2 (W.D. Pa. Feb. 26, 2021) (Ranjan, J.) (finding that "adjusted rates are consistent with the fee schedule established by Community Legal Services, Inc." while recognizing that rates in the Philadelphia legal market are "likely to be higher than those in the Pittsburgh market."); *see also Mozingo v. Oil States Energy Servs., L.L.C.*, 2018 WL 4473345, 2018 U.S. Dist. LEXIS 158780, at *15-16 (W.D. Pa. Sept. 18, 2018) ("We also look to the schedule of attorney's fees relied upon by Community Legal Services in Eastern Pennsylvania.").

Notwithstanding W&S's general reliance on the CLS fee schedule, W&S has decided to utilize lower hourly rates in this lawsuit. As discussed below, Winebrake seeks $600/hour (rather than the CLS rate of $820/hour), and Gottesfeld seeks $400/hour (rather than the CLS rate of $525/hour). W&S has decided to make this adjustment because Judge Wiegand recently held that the rates contained within the CLS fee schedule were not evidence of the prevailing rate within the Western District. *See McDonnell v. KRG Kings, LLC*, Case No. 2:20-cv-0106-CCW, 2024 U.S. Dist. LEXIS 109547, at *6-9 (June 21, 2024). Judge Wiegand subsequently issued an opinion awarding attorney's fees to W&S and, in particular, held that $400 was a reasonable

hourly rate for Gottesfeld who had 15 years of experience. *See McDonnell v. KRG Kings, LLC*, 2024 WL 4197932, 2024 U.S. Dist. LEXIS 166030, at *3-4 (W.D. Pa. Sep. 16, 2024). Judge Wiegand also found that $500 was a reasonable hourly rate for Andrew Santillo ("Santillo"), an attorney at W&S who had 20 years of experience. *See id.*[5] W&S did not seek any fees for time incurred by Winebrake in *McDonnell*. *See id.*

### *(i)    Gottesfeld's Hourly Rate.*

In this litigation, Gottesfeld seeks to be compensated at the hourly rate of $400 per hour.

First, a $400 hourly rate for Gottesfeld is supported by the declarations of three separate Pittsburgh based attorneys who based on their extensive experience within the Western District have opined that $400 is a reasonable rate for Gottesfeld. *See* Declaration of Christine T. Elzer (Doc. 81-2); Declaration of Joseph H. Chivers (Doc. 81-3); Declaration of Timothy Conboy (Doc. 81-4).

Second, Gottesfeld's request for a $400 hourly rate is supported by Judge Wiegand's recent opinion in *McDonnell* wherein the Court found that $400 was a reasonable hourly rate for Gottesfeld. *See McDonnell*, 2024 U.S. Dist. LEXIS 166030, at *3-4.

Third, seeking a $400 hourly rate for Gottesfeld is supported by other recent decisions within this district. *See, e.g.*, *Kairys v. Southern Pines Trucking, Inc.*, 2022 WL 1457786, 2022 U.S. Dist. LEXIS 83045, at *1 n.2 (W.D. Pa. May 9, 2022) (approving $400.00/hr. for attorney with 13 years of experience) (Ranjan, J.); *Turco v. Zambelli Fireworks Mfg. Co.*, 2022 WL 395245, 2022 U.S. Dist. LEXIS 23607, at *9 (W.D. Pa. Feb. 9, 2022) (Wiegand, J.) (same).

Fourth, Gottesfeld's requested $400 hourly rate is below the applicable rate provided by the CLS fee schedule. *See* https://clsphila.org/about-community-legal-services/attorney-fees/

---

[5] *See also* Case No. 2:20-cv-01060-CCW at Doc. 220-1.

10

(providing range of hourly rate of $420-$525 for attorneys with 11-15 year's experience).

### (ii) Winebrake's Hourly Rate.

In this litigation, Winebrake seeks to be compensated at the hourly rate of $600 per hour.

First, the request for a $600 hourly rate for Winebrake is supported by the declarations of three separate Pittsburgh based attorneys, all of whom have opined based on their extensive experience within the Western District that $600 is a reasonable hourly rate for Winebrake. *See* Declaration of Christine T. Elzer (Doc. 81-2); Declaration of Joseph H. Chivers (Doc. 81-3); Declaration of Timothy Conboy (Doc. 81-4).

Second, Winebrake's request for a $600 hourly rate is supported by multiple decisions within this district. For example, in *Hollobaugh v. Roberts*, the defense counsel stipulated to the hourly rate of $650 as to Timothy O'Brien, an attorney with over 40 years of experience, which the Court found to be reasonable. *See*, 2022 WL 16927713, 2022 U.S. Dist. LEXIS 205767, at *1 (W.D. Pa. Nov. 14, 2022) (Ranjan., J.).[6] Likewise, in *Kengerski v. County of Allegheny,* the defendant did not file any objections to Attorney Timothy O'Brien's (48 years of experience) request for a $700 hourly rate and for Attorney Margaret S. Coleman's (18 years of experience) request for a $500 hourly rate. *See* 2023 WL 3688222, 2023 U.S. Dist. LEXIS 93055, at *4-6 (W.D. Pa. May 26, 2023). Other cases are also supportive of this request. *See, e.g.*, *Mozingo*, 2018 U.S. Dist. LEXIS 158780, at *16 (approving $550.00/hr. for senior partners) (Kearney, J.); *Odey v. Indiana University of Pennsylvania*, 2018 U.S. Dist. LEXIS 169693, at *3 n.1 (Pa. W.D. Oct. 2, 2018) (approving $600 for a partner with over 40 years of experience) (Bissoon, J.).

Third, Winebrake's requested hourly rate is supported by Judge Wiegand's recent opinion in *McDonnell* wherein she awarded Andrew Santillo from W&S, who had 20 years of

---

[6] *See also* Case No. 2:21-cv-00069-NR at Doc. 63, p. 3 n.4

11

experience, with an hourly rate of $500. *See McDonnell*, 2024 U.S. Dist. LEXIS 166030, at *4. W&S did not seek any fees for time incurred by Winebrake in *McDonnell*. *See id.* at *5. However, it is instructive to compare the rate awarded to Santillo, who has 20 years of experience, to the rate being requested by Winebrake, who has 33 years of experience.

Fourth, Winebrake's request $600 hourly rate is well below the applicable rate provided by the CLS fee schedule. *See* https://clsphila.org/about-community-legal-services/attorney-fees/ (providing range of hourly rate of $735-850 for attorneys with more than 25 year's experience).

### 3. *Mr. Pepke's Counsel's Recoverable Fee Lodestar Totals $213,550.00.*

Based on the above, Mr. Pepke's counsel's fee lodestar totals $213,550.00 as follows:

| ATTORNEY | TOTAL HOURS SOUGHT | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Peter Winebrake | 104.55 | $600.00 | $62,730 |
| Mark J. Gottesfeld | 377.05 | $400.00 | $150,820 |
|  |  |  |  |
| TOTALS | 481.60 |  | $213,550 |

*See* Gottesfeld Dcl. (Doc. 81-1) at ¶¶ 20-22.

### B. W&S has reasonably incurred $10,617.22 in litigation costs.

"Successful civil rights litigants are entitled to reimbursement of 'costs' connected with litigating their claim as long as the costs are reasonably and necessarily incurred." *Middlebrooks*, 2019 U.S. Dist. LEXIS 30530, at *62 quoting *Becker v. ARCO Chemical Co.*, 15 F. Supp. 2d 621, 635 (E.D. Pa. 1998); *Watcher v. Pottsville Area Emergency Medical Service*, 559 F. Supp. 2d 516, 534-35 (M.D. Pa. 2008) (the costs that a prevailing plaintiff "may recover are not limited to the costs taxable under Rule 54(d)(1) and 28 U.S.C. § 1920, because prevailing parties in civil rights cases are generally entitled to recover any reasonable costs associated with litigating their claims, provided that the costs are necessary and properly documented.") (internal quotations omitted). In addition, "the trial court has equitable discretion

to award [expert witness] fees beyond the statutory amount where the expert's testimony is indispensable to the determination of the case." *Watcher*, 559 F. Supp. 2d at 540 citing *Becker*, 15 F. Supp. 2d at 636; *see also Burgo*, 2024 U.S. Dist. LEXIS 136118, at *27 (awarding expenses related to damages expert in ADEA case).[7]

In this litigation, Mr. Pepke's counsel has incurred $15,250.49 in litigation costs as set forth in the accompanying declaration. *See* Gottesfeld Dcl. (Doc. 81-1) at ¶ 23 and Exhibit B. This amount consists of: (i) filing fees of $405.00; (ii) service of process expenses of $162.70; (iii) deposition transcript costs of $2,691.10; (iv) mediation fee of $1,000.00; (v) expert costs of $6,300.00; (vi) FedEx charges of $105.46; (vii) Photocopying costs of $952.96; (viii) travel/hotel costs of $269.18 associated with in-person Rule 16 conference; (ix) travel/hotel costs of $903.69 associated with 2-days of depositions; (x) travel/hotel costs of $696.03 associated with pretrial conference; and (xi) travel/hotel costs of $1,764.37 associated with trial.[8]

However, Mr. Pepke is ***not*** seeking reimbursement for travel costs incurred this litigation which total more than $3,600. Likewise, Mr. Pepke is not seeking reimbursement for the $1,000 in mediation costs. *See Kengerski*, 2023 U.S. Dist. LEXIS 93055, at *6-7 (finding that shifting mediation costs to defendant would be contrary to the ADR agreement).

The above expenses were reasonable and necessary to pursuing the litigation on Mr. Pepke's behalf. For example, the purchase of the deposition transcripts was necessary so that Mr. Pepke could respond to Manor House's motion for summary judgment (and subsequently prepare for trial). In addition, the retention of Plaintiff's economic damages expert, Royal

---

[7] *Accord Tevelson v. Life & Health Insurance Co. of America*, 1986 WL 12783, 1986 U.S. Dist. LEXIS 18030, at *22-23 (E.D. Pa. Nov. 6, 1986), *aff'd*, 822 F.2d 54 (3d Cir. 1987) (awarding expert witness' costs in ADEA case).
[8] The invoices associated with the largest expense items are attached as Exhibit C.

13

Bunin, was necessary so that he could provide testimony at trial to assist the jury in calculating the potential back pay and front pay owed to Mr. Pepke. Prior to trial, Plaintiff's counsel attempted to stipulate with Manor House concerning the back pay and front pay potentially owed to Mr. Pepke if he prevailed at trial. *See* Gottesfeld Dcl. (Doc. 81-1) at ¶ 29. Such efforts were unsuccessful. *See id.*

Accordingly, after eliminating the travel costs and mediation costs, Mr. Pepke is seeking **$10,617.22** in litigation costs as set forth in the accompanying declaration. *See* Gottesfeld Dcl. (Doc. 81-1) at ¶¶ 23-24.

### III.  CONCLUSION

For the above reasons, Mr. Pepke requests that the Court grant this motion and enter the accompanying proposed order awarding his counsel attorney's fees totaling $213,550.00 and costs totaling $10,671.22.

Dated: October 24, 2024                    Respectfully submitted,

/s/ Peter Winebrake
Peter Winebrake
/s/ Mark J. Gottesfeld
Mark J. Gottesfeld
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Phone: (215) 884-2491
pwinebrake@winebrakelaw.com
mgottesfeld@winebrakelaw.com

*Plaintiff's Counsel*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of October, 2024, the foregoing was served with the Clerk of Court using the CM/ECF system, which will send notification to all parties.

/s/ Mark J. Gottesfeld
Mark J. Gottesfeld
